MAUDE ALEXANDER v. EMPLOYEES' MUTUAL BENEFIT ASSOCIATION.[1]

February 3, 1928.

No. 26,496.

**Motion to strike out evidence.**

A motion to strike out evidence must specify the objectionable evidence. If any part of the evidence to which the motion is directed is admissible the motion will properly be denied.

Trial, 38 Cyc. p. 1404 n. 49, 50.

Defendant appealed from an order of the district court for Ramsey county, Boerner, J. denying its motion for a new trial. Affirmed.

*James F. Murphy* and *Walter T. Ryan,* for appellant.
*Guy W. Kimball,* for respondent.

HILTON, J.

This is an action brought to recover on a health and accident insurance policy. Plaintiff, the beneficiary under said policy, is the widow of Fred J. Alexander, the insured therein. Defendant is a Minnesota corporation engaged in writing health and accident insurance, and the policy in question contained, among others, the following provision:

[1]Reported in 217 N. W. 601.

"Part II.

"Accident Insurance Specific Indemnities

"Section (a)—If the death of the Insured shall result solely from 'such injury' and within ninety days from the date of the accident, the Association will Pay:

"For Loss of Life caused by 'such injury' Six Hundred Dollars, the Principal Sum, to Maude Alexander the Insured's wife if surviving, otherwise to the Insured's estate."

The verdict was for the full amount above stated and interest thereon. The appeal is from an order denying a new trial.

While the policy was in force, Alexander died on October 31, 1926. Plaintiff claimed that death was due to an accident that happened on October 21, 1926. Alexander, while at work in the basement of his home, fell from a chair and ran a rusty nail into the sole of his foot. An infection followed, and ten days later he died of septic lobar pneumonia.

Alexander was 42 years of age and had worked steadily as a telegrapher for 23 years at the Minnesota Transfer. He and plaintiff had been married for 19 years. He had never been ill during their married life nor had he met with previous accident. The evidence adduced at the trial was full and complete as regards the happenings between the date of the accident and the death. It was sufficient, even without the expert testimony of physicians, to warrant the jury in finding that the death was the result of the accident.

Early in the trial, plaintiff made the following offer:

Mr. Kimball: "I would like to offer in evidence Plffs. Ex. C., certified copy of certificate of death on file in the state health office.

Mr. Ryan: "I object to the offer on the ground that it appears to be certified copy, that I believe the original can be produced. I might say this, if the purpose of that certificate is to prove death I am willing to admit the death, but that certificate or that instrument has been made by someone other than the attending physician.

Mr. Kimball: "We take the position here that a death certificate,

or certified copy thereof is admissible as prima facie evidence of the death of the person named therein.

The Court: "I think I will allow it.

"Exception by defendant."

Two doctors were called by plaintiff as expert witnesses. They had listened to the testimony of plaintiff and Mrs. Howat, a practical nurse, and each had read exhibit C, the coroner's death certificate. A small part of the testimony of one of the doctors, predicated in part on the certificate, was received over objection. The same kind of testimony of the other doctor was received without objection. Their testimony as experts was largely given without any reference to the certificate. These two doctors were positive in their statements that the death came as the result of the accident. Defendant called a physician who also testified without objection, basing his opinion in part upon said certificate.

Before the close of the case, it developed that the deputy coroners who had made out the certificate had never seen Alexander or his dead body, and knew nothing personally about the facts. The information upon which they framed the certificate was received over the phone from the physicians who attended Alexander in his last illness.

At the close of the case, by consent of parties, the certificate, exhibit C, was withdrawn from evidence. The certificate had never been in the possession of the jury nor read to it, although statements were made during the trial that it stated the death was due to accidental injury. The court instructed the jury not to consider the certificate in any way in arriving at a verdict.

The first assignment of error made by appellant is as follows:

"The court erred in denying defendant's motion made at the close of the testimony to strike from the record the testimony of Dr. James P. Caldwell and Dr. Zerah P. King and particularly their opinions as [to] the cause of Fred Alexander's death for the reason that their testimony and particularly their opinions were based, in part at least, upon a certified copy of the coroner's certificate of Fred J. Alexander's death, which certificate was introduced in evi-

dence as plaintiff's Exhibit 'C' and which was, at the close of the testimony by consent, withdrawn and stricken from the record."

This motion so made at the close of the case was too broad. It was not confined to the particular portions of the testimony which were based in part on the certificate. It covered all the testimony given by them, much of which was admissible and received without objection.

"A motion to strike out evidence must specify the objectionable evidence. If any part of the evidence to which the motion is directed is admissible the motion may properly be denied." Dunnell, Minn. Pr. § 1818.

We have examined the other assignments of error and find no ground therein for a reversal.

Order affirmed.